RENDERED:  JUNE 30, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1299-MR

COMMONWEALTH OF KENTUCKY                              APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCH PERRY, JUDGE
ACTION NO. 18-CR-003578

QUARTEZ WILSON                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND McNEILL, JUDGES.

CETRULO, JUDGE:  Appellant Commonwealth of Kentucky (the

"Commonwealth") appeals the Jefferson Circuit Court order granting Appellee

Quartez Wilson's ("Wilson") motion to exclude bullet casing evidence allegedly

found in his vehicle.

## FACTUAL AND PROCEDURAL HISTORY

In 2018, Wilson was indicted for attempted murder, first-degree

burglary, four counts of first-degree wanton endangerment, fourth-degree assault,

third-degree terroristic threatening, harassment, being a convicted felon in possession of a firearm, and being a second-degree persistent felony offender. The charges arose from encounters between Wilson, his mother, and her husband over the course of two days.

On October 15, 2018, Wilson allegedly got in a verbal argument with his mother, struck her multiple times, and threw her to the ground. Additionally, according to the Commonwealth's bill of particulars, his mother claimed Wilson said he was going to get a gun and shoot her. Two days later, in the early morning of October 17, 2018, Wilson allegedly kicked in the door to the home his mother and her husband shared and fired six rounds from a high-powered rifle in the direction of the husband. The mother, as well as her two children, were also in the home; however, the husband was the only individual who allegedly saw Wilson.

Later that day, approximately eight hours after the shooting, the police arrested Wilson and allegedly found a shell casing in the vehicle he had been driving. The casing was the same caliber and manufacturer as the casings recovered at the scene of the shooting; however, a ballistics expert had compared the casings and could not conclude that the casings had been fired from the same weapon. Further, the ballistics expert stated that the casing from the vehicle and those found at the scene of the crime did not have similar characteristics.

In October 2022, shortly before the trial was set to begin, Wilson filed a motion to exclude the shell casing allegedly found in his vehicle, claiming that discovery indicated the shell casing had not been fired by the same gun used in the shooting. A few days later, the trial court conducted a hearing on the motion but held it in abeyance because the ballistics expert was expected to testify at trial, and further information would be developed during that testimony. The trial court noted, however, that an indiscriminate shell casing, unless it was matched to the weapon that was supposed to be involved in the crime, seemed too remote and unnecessary in regard to the indicted charges.

A few days later, when court reconvened to begin *voir dire*, the trial court again addressed the motion. The Commonwealth argued that the motion was "significant," so the Commonwealth asked the trial court to resolve the issue before starting trial. The trial court explained, in pertinent part,[1] that Wilson moved to exclude the evidence because the shell casing was not relevant evidence to the indicted charges. The Commonwealth argued, however, that the shell casing showed that Wilson had access to the same type of ammunition and presumably

[1] Additionally, Wilson had moved for a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676, 57 L. Ed. 2d 667 (1978) (holding that a defendant is entitled to an evidentiary hearing when he or she makes a "substantial preliminary showing" that the affiant made a false statement in the affidavit). However, the trial court focused on the relevance issue and found the *Franks* hearing was not a "big issue" because Wilson would be required to convince the trial court that someone lied in the affidavit, and the trial court did not find evidence that any misstatement would have been intentional. As such, the Commonwealth did not appeal that issue, and it is not before this Court.

-3-

the same type of gun used in the shooting because there was only one type of gun that could have fired that type of bullet. Further, the Commonwealth argued that whether the bullets could have been fired from the same gun used in the shooting went toward the weight of the evidence, not the admissibility. As such, the Commonwealth claimed the evidence was probative and material, and it did not believe the evidence would be prejudicial.

Wilson countered that the ballistics report stated the casing allegedly found in Wilson's vehicle could neither be identified nor eliminated as having been fired by the same firearm. Further, Wilson noted that the report stated the ballistics expert did *not* observe "a significant agreement of individual characteristics." Therefore, Wilson claimed any attempt to connect the casings would be pure speculation.

The trial court noted that the weapon used at the scene of the crime had not been found; therefore, the Commonwealth had used the shell casings found at the scene of the crime to determine the type of weapon used. The trial court emphasized that the Commonwealth was then attempting to submit a separate casing found in a different place and time, which was speculative. Further, the trial court noted that the Commonwealth wanted to "offer a single cartridge with a known caliber that had no specific criteria tying it to a weapon that we don't have." The trial court said that the shell casing was "simply too remote and speculative,"

and it was not going to allow the evidence in, although it would listen to the evidence and perhaps revisit the issue. The Commonwealth then moved for a continuance, arguing the casing was a significant part of its case, and further asked for a written order excluding the casing. The trial court entered the order prohibiting introduction of the shell casing, and the Commonwealth appealed. A motion panel of this Court granted the Commonwealth's stay of the trial and the motion for intermediate relief from the evidentiary ruling.

## STANDARD OF REVIEW

"The standard of review of an evidentiary ruling is abuse of discretion." *Ward v. Commonwealth*, 587 S.W.3d 312, 332 (Ky. 2019) (citing *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citing *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)). "Absent such abuse, this Court will not disturb a trial court's decision to admit evidence." *Harris v. Commonwealth*, 384 S.W.3d 117, 122 (Ky. 2012) (citation omitted).

## ANALYSIS

The Commonwealth argues that the trial court abused its discretion when it excluded the shell casing, because the casing was relevant evidence and

-5-

therefore admissible regardless of other available evidence.[2]  The Commonwealth

explains that relevant evidence is "evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence" – *Hudson v.*

*Commonwealth*, 385 S.W.3d 411, 419 (Ky. 2012) (citing KRE 401) – and it is

generally admissible. *Id.* (citing KRE 402).  Specifically, the Commonwealth

explains that the evidence was relevant because it was probative and material:

probative because it made the identity of the shooter more likely, and material

because it helped the Commonwealth "prove that it was [Wilson] who broke into

[his mother and her husband's] home" to commit the crime.

Further, the Commonwealth argues that the shell casing was necessary

because Wilson claimed he did not commit the crime and that his mother's

husband had a motive to lie regarding the identification of Wilson.  Therefore, the

Commonwealth claims the shell casing makes it more likely that Wilson was the

perpetrator and supports the Commonwealth's case for the perpetrator's identity.

Additionally, the Commonwealth states that the shell casing "helps prove that

[Wilson] had the means to commit the shooting – ammunition for an assault rifle."

---

[2] Additionally, the Commonwealth argues the evidence was not too prejudicial, confusing, misleading, or speculative under Kentucky Rule of Evidence ("KRE") 403; however, the trial court found the evidence was not relevant, so it did not conduct a KRE 403 analysis.  As such, we need not address the Commonwealth's KRE 403 argument.

However, the Kentucky Supreme Court has found that evidence with no known connection to the crime is generally not admissible. *See Harris*, 384 S.W.3d at 123 (citing *Major v. Commonwealth*, 177 S.W.3d 700 (Ky. 2005)). *See also Barth v. Commonwealth*, 80 S.W.3d 390, 402 (Ky. 2001) (quoting *Higgins v. Commonwealth*, 142 Ky. 647, 134 S.W. 1135, 1138 (1911) ("The proof need not positively show the connection; but there must be proof rendering the inference reasonable or probable from its nearness in time and place or other circumstances.").

In *Harris*, the Kentucky Supreme Court found that weapons that were not used in the crime were not admissible evidence. *Harris*, 384 S.W.3d at 122. There, the defendant owned two guns that were the same caliber as the murder weapon, and the trial court admitted those weapons into evidence. *Id.* Testing had shown, however, that those weapons were not used during the murder. *Id.* Our Supreme Court – relying on *Major*, along with some out-of-state cases – determined that the trial court had abused its discretion when it admitted the two guns into evidence because they did not have a connection to the crime and therefore were not relevant. *Id.* at 123-24.

Likewise, in *Major*, the Kentucky Supreme Court found that the proposed evidence was not relevant because it had not been connected to the crime. *See id.* There, the defendant had "killed his wife with a pistol but the pistol

was never recovered." *Id.* at 123. The trial court had permitted the Commonwealth to introduce three other guns that the defendant owned but had not been used in the crime. *Id.* Our Supreme Court reversed the trial court and held that the guns were not admissible "absent evidence that any of the firearms were involved in the murder." *Id.* (quoting *Major*, 177 S.W.3d at 710).

Although here, the Commonwealth sought to admit shell casings – not other guns – we find the underlying analysis applicable. Similar to *Harris* and *Major*, here, the Commonwealth attempted to submit evidence that was similar to that found at the scene of the crime but that had no known connection to the crime. The Commonwealth argues the casings were the same caliber and manufacturer; however, the ballistics expert had analyzed the shell casings and could not conclude that the casing from Wilson's vehicle came from the same gun as the casings found at the scene of the crime. Further, the ballistics expert had found no similar characteristics between the casing found in Wilson's vehicle and those found at the scene of the crime. As such, the Commonwealth failed to connect the casing allegedly found in Wilson's vehicle with those found at the scene of the crime, rendering the shell casing irrelevant.

Based on those facts, the trial court concluded there was no evidence that the casing from Wilson's vehicle was tied to the weapon used at the scene of the crime; therefore, it was not admissible. The trial court's determination was not

arbitrary, unfair, nor counter to sound legal principles and was not an abuse of discretion. *See Ward*, 587 S.W.3d at 333 (citation omitted).

## CONCLUSION

The trial court did not abuse its discretion when it granted Wilson's motion to exclude the shell casing allegedly found in his vehicle. As such, the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Daniel Cameron
Attorney General of Kentucky

Jeanne Anderson
Special Assistant Attorney General
Louisville, Kentucky