Nathaniel BROWN, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 96–SC–1137–MR.

Supreme Court of Kentucky.

Jan. 21, 1999.

As Modified Jan. 27, 1999.

**514**

Larry H. Marshall, Department of Public Advocacy, Frankfort, KY, for Appellant.

A.B. Chandler, III, Attorney General, David A. Sexton, Ian G. Sonego, Assistant Attorney General, Office of Attorney General, Frankfort, KY, for Appellee.

GRANT M. HELMAN, Special Justice.

On December 16, 1996, following an eight day jury trial in the Jefferson Circuit Court, Nathaniel Brown, Jr. ("Appellant" herein) was convicted of committing the intentional murder of his former wife, Cynthia Brown and of the attempted murder of Ms. Brown's fiancee, Greg Barker. The Appellant received concurrent sentences for said convictions of thirty and ten years respectively. After unsuccessfully moving the trial court for a new trial, the Appellant instituted this appeal.

The Appellant's convictions stem from an incident occurring at his home on August 23, 1995. It is undisputed that Cynthia Brown and Greg Barker, along with the two children of the Appellant's and Ms. Brown's former marriage, went to the Appellant's home on the evening of August 23. The purported reason for the visit was to retrieve some of the eldest child's personal effects prior to her enrollment at college. Ms. Brown and Mr. Barker remained in Ms. Brown's automobile while the children went inside Appellant's home. While Ms. Brown and Mr. Barker were in the automobile, Appellant's current wife arrived on the scene, in her car. At the time she arrived, Appellant had not yet approached Ms. Brown's vehicle. What transpired from that point is disputed.

The Appellant contends that his current wife called him to Ms. Brown's automobile to meet Mr. Barker. When he arrived, he leaned into the car from the driver's side window, ostensibly to introduce himself to Greg Barker. At that point he noticed a brochure from an out of state college and asked what it was. Appellant contends he then saw that both Ms. Brown and Mr. Barker were armed with handguns. The Appellant testified that in the ensuing struggle for Ms. Brown's gun she was struck by two shots, and that Greg Barker then used her as a human shield as he and the Appellant exchanged gunfire. The Appellant, with the gun he purportedly took from Ms. Brown, then circled the car to the passenger side and fired a shot at Greg from the passenger window. Appellant then retreated into his home. He reemerged and claims Greg Barker then threatened to kill him. Appellant then pursued Greg Barker down the street, firing more shots. Mr. Barker ultimately escaped after the Appellant's gun misfired and he surrendered it to a friend. The Appellant asserted a self-defense theory at trial.

The Commonwealth asserted at trial that the Appellant intentionally murdered Ms. Brown to prevent her from testifying at his then upcoming trial for flagrant non-support. In challenging the Appellant's self-defense theory the Commonwealth contended that neither Ms. Brown nor Mr. Barker had any firearms in their possession when they arrived at the Appellant's home on August 23. As to this second contention, the credibility and veracity of the Commonwealth's witness, Greg Barker, Ms. Brown's fiancee, was of tantamount importance. The Appellant contends that the trial court committed substantial and prejudicial error when it allowed Mr. Barker to testify from the stand while holding his personal Bible.

In support of its theory that the Appellant murdered Ms. Brown to prevent her from testifying against him at his upcoming trial for flagrant non-support, the Commonwealth provided great detail of the facts and circumstances of the Appellant's indictment for said crime. This included testimony from a Jeffer-

son Circuit Court deputy clerk, as well as the testimony of an Assistant Commonwealth's Attorney. The Appellant contends that the trial court improperly admitted evidence of Appellant's indictment for flagrant non-support and evidence supporting that indictment committing substantial and prejudicial error.

### ANALYSIS

The Appellant contends there were several errors at the trial of this matter by the Jefferson Circuit Court. This Court will address two of the issues raised by Appellant herein: 1) Appellant's claim that he suffered prejudice constituting reversible error when Greg Barker was permitted to testify while holding his own Bible; and 2) Appellant's claim that he suffered prejudice constituting reversible error when the Commonwealth introduced evidence of Appellant's indictment for flagrant non-support, as well as evidence supporting that indictment. Both of these issues were properly preserved for appeal by defense counsel's objections to same.

### I. Greg Barker's testimony while holding his own Bible.

At the trial of this matter, the Appellant testified that when he leaned into Ms. Brown's automobile he saw two guns, one in Ms. Brown's lap and one in Mr. Barker's right hand. The Commonwealth contended neither Ms. Brown nor Mr. Barker had any firearms in the car. The Commonwealth called Mr. Barker as witness at trial and Mr. Barker testified that neither he nor Ms. Brown were armed on August 23, 1995. Clearly the testimony of the Appellant and Mr. Barker are diametrically opposed. The jury could believe only one of the witnesses with regard to whether there were firearms present in Ms. Brown's automobile on August 23, 1995. The viability of the Appellant's defense of self-protection had the potential to be determined based on which witness the jury believed with regard to testimony regarding firearms or lack thereof in Ms. Brown's car prior to the Appellant's arrival.

Over defense counsel objections, Mr. Barker was permitted by the trial court to testify while holding a Bible. KRE 404(a), Charac-

ter evidence generally, dictates: "(e)vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity thereon on a particular occasion except: (3) ... [e]vidence of the character of witnesses, as provided in KRE 607, KRE 608 and KRE 609." KRE 608, Evidence of Character dictates that "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation ..." KRE 608 does not, however, indicate when such character evidence is admissible, nor does it indicate whether a witness' credibility must first be attacked prior to admitting character evidence. In *Pickard Chrysler, Inc. v. Sizemore*, Ky.App., 918 S.W.2d 736, 740 (1995), the Court held that "it continues to be the law that evidence of good character cannot be introduced until after the witness' character has been attacked." In *Sizemore*, the trial court disallowed evidence of the good reputation of one of Pickard Chrysler, Inc.'s, witnesses, reasoning that "Pickard could not bolster its witness' credibility with evidence of that witness' good reputation unless the other side first introduced evidence that is bad." *Id.*

Similarly, in *Ratliff v. Line*, Ky., 451 S.W.2d 391 (1970), Plaintiff was permitted to call several witnesses at trial who testified about his church work, and work with church brotherhood and youth groups over the objections of defendant's counsel. Plaintiff's counsel claimed at trial that the evidence was admissible because it sustained Plaintiff's *credibility ...*" *Ratliff* at 393, emphasis in original. The *Ratliff* Court held that the admission of such evidence was clearly erroneous and carried such a probability of prejudice as to require reversal of the judgment.

Indeed, the circumstances of the instant case are somewhat different than *Ratliff,* supra, however, the effect of Mr. Barker's testimony while holding a Bible likely served to bolster his credibility with the jury and it did so prior to any attempt by Appellant's trial counsel to impeach Mr. Barker. Additionally, KRE 404 contemplates bolstering the credibility of a witness in the form of opinion or reputation, holding a Bible while testifying is not contemplated by the rule. Mr. Barker's testimony was diametrically opposed to

Mr. Brown's, the jury could not believe both men's testimony regarding the presence of a gun in Ms. Brown's automobile. Without reaching a finding in regard to whether the Commonwealth or the witness actually intended to bolster Mr. Barker's credibility, it is our opinion that permitting Mr. Barker to testify while holding a Bible is reversible error and in the parlance of *Ratliff,* supra, carries such a probability of prejudice as to require reversal of the judgment.

## II. Admission of evidence of Appellant's indictment for non-support and evidence supporting that indictment.

■ Prior to trial, and pursuant to KRE 404(c) the Commonwealth filed two motions to introduce evidence at trial of Appellant's prior crimes, wrongs or acts. The trial court granted the Commonwealth's motion over the objection of defense counsel. Appellant claims the trial court erred in admitting evidence of Appellant's indictment for flagrant non-support, as well as evidence supporting that indictment. Appellant's claims require a two-fold analysis, first, whether evidence of the indictment was admissible and second, whether the extent of the evidence admitted supporting the indictment was overly prejudicial to Appellant.

KRE 404(b) which provides for admitting evidence of other crimes, wrongs, or acts in certain instances states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two could not be accomplished without serious adverse effect on the offering party.

■ Appellant's indictment for flagrant non-support is not inextricably intertwined with evidence essential to the case at bar. Therefore KRE 404(b)(2) is inapplicable in the instant case. KRE 404(b)(1) allowing for evidence of prior crimes, wrongs or acts to prove motive or intent, however, does provide a basis for admitting evidence of appellant's indictment for flagrant non-support. The trial court has discretion to admit evidence of prior crimes, wrongs or bad acts if it is "relevant, probative and the potential for prejudice does not outweigh the probative value of such evidence." *Parker v. Commonwealth,* Ky. 952 S.W.2d 209, 213 (1997).

■ Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable to less probable than it would be without the evidence." KRE 401. Evidence of Appellant's indictment for flagrant non-support was relevant and probative. The Commonwealth argued the indictment provided Appellant with a motive to murder Cynthia Brown. Appellant claimed the defense of self-protection at trial. Evidence of collateral criminal conduct is admissible for purposes of rebutting "a material contention of the defendant." *Moore v. Commonwealth,* Ky., 771 S.W.2d 34, 39 (1998) quoting, *Bates v. State,* Ala. Cr.App., 405 So.2d 1334 (1981). Further, the probative value of admitting Appellant's indictment for non-support outweighed any prejudice suffered by Appellant at trial from same. Therefore, the trial court did not err in allowing the Commonwealth to admit evidence of Appellant's indictment for flagrant non-support pursuant to KRE 404(b).

■ The question of whether the trial court erred in allowing the Commonwealth to present evidence which tended to prove Appellant was guilty of flagrant non-support is not so clear. Even where evidence of a prior crime has some relevance, the trial judge must use some discretion in deciding to what extent the prior bad act may be utilized without prejudice. *Funk v. Commonwealth,* Ky., 842 S.W.2d 476 (1993). The Commonwealth was permitted to introduce evidence and call witnesses to testify regarding the methods used to calculate Appellant's alleged arrearage, the amount of the alleged arrearage, that no payments had been made according to the county attorney's documents

and that there was only one "live" witness in the non-support case, Cynthia Brown.

■ As the Court noted in *O'Bryan v. Commonwealth,* Ky., 634 S.W.2d 153, 156 (1982), "[u]ltimate fairness mandates that an accused be tried only for the particular crime for which he is charged. An accused is entitled to be tried for one offense at a time, and evidence must be confined to that offense." The same rationale holds true in the case *sub judice.* The Appellant was on trial for the murder of Cynthia Brown and the attempted murder of Greg Barker, not for flagrant non-support. While the admission of evidence of appellant's flagrant non-support indictment did not constitute error, the admission of excessive evidence supporting that indictment was "unduly prejudicial and trial error." *Funk* at 481.

For the reasons stated above, this case is reversed and remanded for further proceedings in conformity with this opinion.

LAMBERT, C.J., and STEPHENS, and STUMBO, JJ., concur.

COOPER, J., concurs with part I of the majority opinion and joins WINTERSHEIMER, J., in his dissent with respect to part II.

WINTERSHEIMER, J., dissents by separate opinion in which GRAVES, J., joins.

JOHNSTONE, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because I do not believe it was reversible error to allow a witness to testify holding what appeared to some to be a Bible and the trial court did not abuse its discretion by admitting evidence regarding the fact that the accused was under indictment for failure to pay child support to the murder victim.

The mere fact that witness Barker held a book that is alleged to have been a Bible in his lap during his testimony was not reversible error. The witness held the book with both hands covering the spine so that the title of the book could not be determined from any angle. The witness did not refer to the Bible during his testimony. The book in question possessed by the witness was not given to the jury and was not used by the prosecutor in arguing to the jury that they should convict Brown or that they should believe the witness's testimony over that of the accused. The possession of the Bible under circumstances where it could not be observed by the jury did not amount to any federal or state constitutional violation and was not prejudicial error. *See Rose v. Clark,* 478 U.S. 570 at 575, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), for a more complete discussion of absence of federal constitutional error and the harmless error approach. Brown was not deprived of a fair trial. The error, if any, was harmless. RCr 9.24.

Although it may not be good practice for a witness to hold anything while testifying, the trial was conducted by an experienced judge who was in control of the court room. He did not consider it to be a serious problem. The judge did not abuse his discretionary function.

In addition, the trial judge did not abuse his discretion in admitting evidence regarding the fact that Brown was under indictment for failure to pay child support to the murder victim. Brown testified that he was not in fact delinquent in paying child support and that he had been paying in cash directly to the victim.

*Tucker v. Commonwealth,* Ky., 916 S.W.2d 181 (1996), held in part that the liability of a defendant for a substantial sum of child support arrearage was relevant to establish a motive to rob and consequently it was admissible under the rule governing evidence of other crimes or bad acts. KRE 404(b)(1).

Under all the circumstances of this case, I would affirm the conviction in all respects.

GRAVES, J., joins this dissent.

COOPER, J., concurs with part I of majority opinion and joins WINTERSHEIMER, J., in his dissent with respect to part II.